## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Felicia Clemons, | : Civil Action |
| | : |
| Plaintiff, | : No. |
| | : |
| v. | : JURY TRIAL DEMANDED |
| | : |
| Cushman & Wakefield U.S., Inc., | : |
| | : |
| Defendant. | : |

## COMPLAINT

### Introduction

1.      Felicia Clemons (Clemons) is suing her former employer, Cushman & Wakefield U.S., Inc. (C&W), for disability discrimination and retaliation in violation of the Americans with Disabilities Act, as amended ("ADAAA"), 42 U.S.C. § 12101 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et seq., and for interference and retaliation in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.

2.      While Clemons fought breast cancer, C&W approved her medical leave and demanded that she provide a definite return-to-work date, which she did. When her doctors released her to return to work without restrictions on that very date, C&W refused to reinstate her, ordered her to remain on a medical leave that it knew was no longer paid, and then fired her. C&W never told Clemons the truth: it had already decided she was not coming back.

3.      Clemons seeks compensatory damages, punitive damages, liquidated damages, back pay, front pay, equitable and injunctive relief, attorneys' fees, and costs.

1

## Jurisdiction and Venue

4. This Court has original jurisdiction over Clemons's ADAAA and FMLA claims pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over Clemons's PHRA claims pursuant to 28 U.S.C. § 1367(a) because those claims arise from the same common nucleus of operative facts.

5. All jurisdictional prerequisites have been satisfied. Clemons dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") on April 11, 2025, docketed as EEOC Charge No. 530-2025-05206, alleging disability discrimination and retaliation. On May 14, 2026, the EEOC issued a Determination and Notice of Rights. Clemons files this Complaint within ninety days of her receipt of the Determination and Notice of Rights. More than one year has passed since Clemons dual-filed her Charge with the PHRC, and her PHRA claims are therefore ripe.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Clemons's claims occurred in this District. At all relevant times, Clemons worked remotely for C&W from her home in Essington, Delaware County, Pennsylvania, which is in this District.

## The Parties

7. Clemons is an adult individual residing in Essington, Delaware County, Pennsylvania.

8. In December 2023, Clemons was diagnosed with an aggressive form of breast cancer.

9.      Clemons is disabled within the meaning of the ADAAA and the PHRA because her breast cancer is a physical impairment that substantially limits one or more major life activities, including normal cell growth and the operation of her immune system. Clemons also has a record of a disability, and C&W regarded her as disabled.

10.     At all relevant times, C&W employed Clemons as a Senior Portfolio Administration Coordinator (also referred to as a Senior Portfolio Administrator).

11.     C&W is a global commercial real estate services firm with a principal business address at 575 Maryville Centre Drive, Suite 600, St. Louis, Missouri 63141.

12.     C&W employs more than 10,000 employees, including fifty or more employees within seventy-five miles of Clemons's worksite.

13.     At all relevant times, C&W was Clemons's "employer" within the meaning of the ADAAA, the FMLA, and the PHRA, and acted through its agents, managers, and employees.

**Factual Background**

**Disability Discrimination and Retaliation Are Foreseeable**

14.     Disability discrimination and retaliation in the American workplace are common and foreseeable. In Fiscal Year 2024, the period during which C&W refused to return Clemons to work, the EEOC received 88,531 new charges of workplace discrimination, a 9% increase over the prior fiscal year. *See* https://www.eeoc.gov/data/enforcement-and-litigation-statistics-0 (last visited August 11, 2026).

15.     Disability discrimination is consistently among the most frequently alleged bases of discrimination in charges filed with the EEOC. Approximately 38% of the charges filed in Fiscal Year 2024 alleged disability discrimination. *See id.*

16.     Retaliation was the most frequently alleged basis in charges filed with the EEOC for the seventeenth consecutive year, appearing in 42,301 charges. *See id.* Retaliation allegations frequently accompany disability discrimination claims.

17.     Because disability discrimination and retaliation are common and foreseeable, employers like C&W should maintain policies, training, and systems to prevent them, including systems to ensure that employees returning from approved medical leaves are promptly reinstated rather than punished for having been sick. The rule is simple: an employee who returns from an approved medical leave gets her job back.

18.     C&W maintains exactly such policies—on paper. C&W's Reasonable Accommodation Policy promises that C&W "will engage in an interactive process" with employees who need accommodations. C&W's Global Anti-Harassment, Anti-Discrimination and Anti-Retaliation Policy expressly prohibits discrimination based on "the requesting, denial or taking of any job-protected and approved Leaves of Absence." C&W's Equal Employment Opportunity Policy prohibits retaliation against employees who assert their rights. When Clemons's doctors released her to return to work, C&W followed none of them.

**Clemons's Employment with C&W**

19.     In July 2022, C&W hired Clemons as a Senior Portfolio Administration Coordinator (also referred to as a Senior Portfolio Administrator).

20.     At all times, Clemons worked remotely for C&W from her home in Essington, Pennsylvania.

21.     At all times, Clemons was qualified for her position. She successfully completed her 2023 performance goals, saved her client thousands of dollars by identifying billing errors in landlords' invoices, and earned a "Meets Expectations" rating from her manager for her workplace

conduct. C&W never disciplined Clemons, never placed her on a performance improvement plan, and has never claimed that it terminated her employment because of her performance.

**Clemons Is Diagnosed with Breast Cancer and Takes an Approved Medical Leave**

22.     In early December 2023, Clemons underwent surgery to remove a mass in her underarm. The pathology report revealed an aggressive form of breast cancer.

23.     Clemons promptly informed her manager of her diagnosis and continued working while she prepared for treatment and a medical leave of absence.

24.     On February 1, 2024, Clemons began a medical leave of absence due to her serious health condition.

25.     C&W approved Clemons's leave and accommodations under company leave policies, including job-protected leave under the FMLA and income-replacement benefits under C&W's short-term disability policy.

26.     From February 2024 through July 2024, Clemons underwent weekly chemotherapy and immunotherapy treatment. Even while undergoing treatment, Clemons completed C&W's required employee trainings in order to maintain her employment.

27.     On August 1, 2024, Clemons was approved for long-term disability ("LTD") benefits through Unum, C&W's disability carrier.

28.     In August 2024, Clemons underwent an additional surgery. In October 2024, Clemons underwent a double mastectomy.

**C&W Demands a Definite Return-to-Work Date, and Clemons Provides One**

29.     On August 7, 2024, Elizabeth Cherrick, a C&W Employee Relations Specialist, sent Clemons a letter stating that C&W interpreted her leave as "indefinite – a request your work unit cannot accommodate," and that C&W would "move forward to terminate" her employment

unless, by August 15, 2024, Clemons presented documentation from her healthcare provider setting forth with reasonable certainty a specific date on which she could be expected to return to work and perform the essential functions of her job.

30.     The August 7, 2024 letter warned that if sufficient information was not provided by August 15, 2024, Clemons's employment would be terminated on August 16, 2024 and "considered a voluntary resignation." The letter attached a Supplemental Interactive Process Questionnaire ("SIPQ") for Clemons's healthcare provider to complete.

31.     On August 12, 2024, three days before C&W's deadline, Clemons returned the completed questionnaire from her healthcare provider. The documentation stated a return-to-work date of November 15, 2024, with no restrictions.

32.     C&W did not respond. C&W never told Clemons that the November 15, 2024 return date was unacceptable, never told her that her position was in jeopardy, and never communicated any concern about her return to work.

**Clemons's Doctors Release Her to Return to Work, and C&W Refuses to Reinstate Her**

33.     On November 15, 2024, Clemons's physician, Dr. Laura Gowen, released Clemons to return to work without restrictions.

34.     On November 15, 2024, Clemons returned to work as scheduled and notified her supervisor that she had returned. Her supervisor contacted Human Resources, and Human Resources called Clemons and requested an updated return-to-work letter from her doctor.

35.     On November 19, 2024, Clemons obtained additional clearance from Dr. Benjamin Jacobs releasing her to return to work without restrictions as of November 22, 2024.

6

36. Between November 20 and November 22, 2024, Clemons promptly communicated these medical releases to C&W through multiple emails and phone calls to Ms. Cherrick, attaching her doctor's return-to-work letter and asking C&W to confirm that she was cleared to return to work.

37. Despite Clemons's repeated attempts to return to work, C&W refused to reinstate her and instead told her that she had to remain on medical leave.

38. Because Clemons's physicians had released her to work without restrictions, she no longer met the definition of disability under C&W's LTD policy. Unum closed Clemons's LTD claim effective November 22, 2024, and paid benefits only through November 21, 2024.

39. Clemons told C&W that because she had been released to return to work, her disability claim was closed and she had no income. C&W responded that there was nothing it could do about that.

40. From November 22, 2024 through her termination, C&W kept Clemons in employment limbo: not reinstated, not working, and not paid.

41. In November 2024, when her physicians released her to return to work without restrictions, Clemons was ready, willing, and able to perform the essential functions of her position, or a comparable position, with or without reasonable accommodation. C&W nevertheless made no effort to engage in the interactive process with Clemons or to return her to work. Instead, C&W ordered Clemons to remain on a medical leave it knew was unpaid—leaving her no choice but to ask Unum whether her closed disability claim could be reopened.

**C&W Fires Clemons**

42. On January 13, 2025, C&W fired Clemons, effective immediately.

7

43.     C&W's termination memorandum, issued by Katie Stewart, Director, People Partnering, offered Clemons a lump-sum "Separation Payment" of $2,949.60, an amount equal to three weeks of her compensation, plus a payment equal to two months of the employer's portion of COBRA premiums, in exchange for a general release of all claims. Clemons did not sign the release.

44.     At the time of her termination, Clemons earned approximately $983.20 per week, or approximately $51,126 per year, plus employee benefits.

45.     At no time before or at her termination did C&W tell Clemons that her position had been eliminated or that her termination was part of any reduction in force. When Clemons asked what had happened to her role, C&W told her only that another employee had absorbed her duties. Not until weeks after firing her did C&W claim, for the first time, that Clemons's position had been "eliminated" months earlier—while she was on medical leave—and that no one had told her.

**C&W Gives a False Reason for the Termination**

46.     After her termination, Clemons applied for unemployment compensation benefits. C&W contested her claim, asserting that Clemons was terminated for absenteeism/tardiness.

47.     C&W's assertion was false. Clemons was on an approved medical leave before she attempted to return to work, and it was C&W that refused to reinstate her.

48.     Because of C&W's false statement, Clemons's unemployment claim was initially denied, and it took approximately one month to resolve.

49.     With no income, Clemons could not afford to maintain COBRA continuation coverage of more than $800 per month. She lost her health insurance coverage and incurred

$11,795.73 in out-of-pocket medical expenses that her employer-sponsored insurance would have covered.

50.    From November 22, 2024 until in or about January 2026, Clemons had no employment income. She was forced to live off credit cards and feared losing her home, all while continuing to recover from breast cancer and its treatment. Since in or about January 2026, Clemons's only employment has been temporary work at substantially lower pay than she earned at C&W.

51.    Clemons has diligently searched for comparable permanent employment but has been unable to secure it.

### Defendant's Legal Violations

52.    C&W's acts, failures to act, practices, and policies set forth above constitute disability discrimination and retaliation in violation of the ADAAA and the PHRA, and interference and retaliation in violation of the FMLA.

53.    C&W took the adverse actions described above because of Clemons's disability, her record of disability, and/or because C&W regarded her as disabled, and in retaliation for her protected activity, including requesting reasonable accommodations, taking approved medical leave, and seeking reinstatement.

54.    C&W's motive was economic. Once Clemons's disability benefits ended, keeping her on "medical leave" cost C&W nothing, while reinstating her meant paying her salary. So, C&W ordered a healthy employee to remain on an unpaid leave she did not need and did not want, ran out the clock, and then fired her—having already assumed she was never coming back.

9

55.     As a direct and proximate result of C&W's unlawful conduct, Clemons has suffered and continues to suffer lost wages and benefits, emotional distress, mental anguish, humiliation, embarrassment, loss of dignity, financial hardship, and other damages.

56.     These violations were the foreseeable result of C&W's failure to follow its own written policies: its promise to "engage in an interactive process" with employees needing accommodations, its express prohibition on discrimination based on "the requesting, denial or taking of any job-protected and approved Leaves of Absence," and its prohibition on retaliation. C&W wrote the rules. It chose not to follow them for Clemons.

### COUNT I: Disability Discrimination (ADAAA)

57.     Paragraphs 1 through 56 are incorporated by reference as if fully set forth herein.

58.     Clemons is disabled within the meaning of the ADAAA because she has a physical impairment, breast cancer, that substantially limits one or more major life activities, including normal cell growth and the operation of her immune system. Clemons also has a record of a disability, and C&W regarded her as disabled.

59.     Clemons was a qualified individual under the ADAAA because she could perform the essential functions of her position, or a comparable position, with or without reasonable accommodation. Her physicians confirmed as much when they released her to return to work without restrictions as of November 15, 2024—the very return date C&W had demanded and received months earlier.

60.     C&W discriminated against Clemons because of her disability, her record of disability, and/or because C&W regarded her as disabled, in violation of 42 U.S.C. § 12112(a), including by refusing to reinstate her after her physicians released her to return to work, forcing her to remain on an unpaid leave of absence, and terminating her employment.

10

61.     C&W further violated the ADAAA, 42 U.S.C. § 12112(b)(5)(A), by failing to engage in the interactive process in good faith and by failing to provide reasonable accommodations, including a finite medical leave with reinstatement at its conclusion and/or reassignment to a vacant, comparable position—an accommodation that, upon information and belief, C&W provided to every other member of Clemons's disbanded team, but not to her.

62.     C&W acted willfully and with malice or reckless indifference to Clemons's federally protected rights.

WHEREFORE, Clemons respectfully requests that this Court enter judgment in her favor and against C&W as follows:

A.     A declaratory judgment that C&W's actions as described herein violate the ADAAA;

B.     Equitable and injunctive relief, including:

   (1)     preliminary and permanent injunctions enjoining C&W from engaging in disability discrimination;

   (2)     an order requiring C&W to institute and carry out policies, practices, and programs providing equal employment opportunities, including training for all employees regarding their responsibilities under the ADAAA;

   (3)     an order requiring C&W to deliver this Court's verdict to all managers and employees of the company;

   (4)     an order requiring C&W to report to this Court regularly regarding its compliance with anti-discrimination law; and

   (5)     an order reinstating Clemons to her former position or an equivalent position;

C.     An award of back pay, with prejudgment interest, and all employment benefits Clemons would have received, including but not limited to retirement and pension benefits and seniority;

D.     An award of front pay in lieu of reinstatement;

E.     An award of compensatory damages sufficient to compensate Clemons for her injuries, including but not limited to emotional distress, career damage, loss of earnings capacity, mental anguish, humiliation, embarrassment, and loss of dignity;

F.     Punitive damages as allowable by law;

G.     An award of reasonable attorneys' fees and costs of suit;

H.     An award of pre- and post-judgment interest as provided by law;

I.     An award of other monetary losses suffered by Clemons, including negative tax consequence damages; and

J.     Such other and further relief as this Court deems necessary and proper.

## COUNT II: Retaliation (ADAAA)

63.     Paragraphs 1 through 62 are incorporated by reference as if fully set forth herein.

64.     Clemons engaged in protected activity under the ADAAA, including by requesting the reasonable accommodation of a medical leave of absence, submitting return-to-work documentation from her healthcare providers, and repeatedly seeking reinstatement to her position.

65.     C&W took materially adverse actions against Clemons because of her protected activity, in violation of 42 U.S.C. § 12203(a), including by refusing to reinstate her, forcing her to remain on an unpaid leave of absence, terminating her employment, and contesting her unemployment compensation claim with a false reason for her termination.

66.     There is a causal connection between Clemons's protected activity and C&W's adverse actions, including the unduly suggestive temporal proximity between Clemons's attempts to return to work and C&W's refusal to reinstate her and decision to terminate her employment, and C&W's shifting and inconsistent explanations for its actions.

67.     C&W acted willfully and with malice or reckless indifference to Clemons's federally protected rights.

WHEREFORE, Clemons respectfully requests that this Court enter judgment in her favor and against C&W as follows:

A.     A declaratory judgment that C&W's actions as described herein violate the ADAAA;

B.     Equitable and injunctive relief, including:

(1)     preliminary and permanent injunctions enjoining C&W from engaging in retaliation against employees who exercise their rights under the ADAAA;

(2)     an order requiring C&W to institute and carry out policies, practices, and programs providing equal employment opportunities, including training for all employees regarding their responsibilities under the ADAAA;

(3)     an order requiring C&W to deliver this Court's verdict to all managers and employees of the company;

(4)     an order requiring C&W to report to this Court regularly regarding its compliance with anti-discrimination law; and

(5)     an order reinstating Clemons to her former position or an equivalent position;

C.     An award of back pay, with prejudgment interest, and all employment benefits Clemons would have received, including but not limited to retirement and pension benefits and seniority;

D.     An award of front pay in lieu of reinstatement;

E.     An award of compensatory damages sufficient to compensate Clemons for her injuries, including but not limited to emotional distress, career damage, loss of earnings capacity, mental anguish, humiliation, embarrassment, and loss of dignity;

F.     Punitive damages as allowable by law;

G.     An award of reasonable attorneys' fees and costs of suit;

H.     An award of pre- and post-judgment interest as provided by law;

I.     An award of other monetary losses suffered by Clemons, including negative tax consequence damages; and

J.     Such other and further relief as this Court deems necessary and proper.

## COUNT III: Interference (FMLA)

68.     Paragraphs 1 through 67 are incorporated by reference as if fully set forth herein.

69.     At all relevant times, Clemons was an eligible employee under the FMLA because she was employed by C&W for at least twelve months and worked at least 1,250 hours during the twelve-month period preceding her leave.

70.     At all relevant times, C&W was a covered employer under the FMLA because it employed fifty or more employees within seventy-five miles of Clemons's worksite.

71.     Clemons's breast cancer was a serious health condition within the meaning of the FMLA, 29 U.S.C. § 2611(11), because it involved inpatient care and/or continuing treatment by healthcare providers, including multiple surgeries, weekly chemotherapy, and immunotherapy.

14

72.     Beginning on February 1, 2024, Clemons took a medical leave of absence that C&W approved and designated under its leave policies, including the FMLA.

73.     C&W interfered with, restrained, and denied Clemons's exercise of her FMLA rights, in violation of 29 U.S.C. § 2615(a)(1), including by deciding during her FMLA-protected leave—and because of it—that she would not be returned to her position, failing to restore her to her position or an equivalent position when she was released to return to work, requiring her to remain on an unpaid medical leave, and terminating her employment. Upon information and belief, had Clemons been continuously employed rather than on protected leave, C&W would have placed her in a comparable position, as it did for every other member of her team.

74.     C&W's violations of the FMLA were willful and were not in good faith, and C&W had no reasonable grounds to believe that its conduct complied with the FMLA.

WHEREFORE, Clemons respectfully requests that this Court enter judgment in her favor and against C&W as follows:

A.     A declaratory judgment that C&W's actions as described herein violate the FMLA;

B.     Equitable and injunctive relief, including:

(1)     preliminary and permanent injunctions enjoining C&W from interfering with employees' rights under the FMLA; and

(2)     an order reinstating Clemons to her former position or an equivalent position, or an award of front pay in lieu of reinstatement;

C.     An award of lost wages and employment benefits, with prejudgment interest;

D.     Liquidated damages as allowable by law;

E.     An award of reasonable attorneys' fees and costs of suit;

F.     An award of pre- and post-judgment interest as provided by law;

G.  An award of other monetary losses suffered by Clemons, including negative tax consequence damages; and

H.  Such other and further relief as this Court deems necessary and proper.

## COUNT IV: Retaliation (FMLA)

75.  Paragraphs 1 through 74 are incorporated by reference as if fully set forth herein.

76.  Clemons exercised her rights under the FMLA by taking an approved medical leave of absence for her serious health condition and by seeking reinstatement at the conclusion of her leave.

77.  C&W discriminated and retaliated against Clemons for exercising her FMLA rights, in violation of 29 U.S.C. § 2615(a)(1)-(2) and 29 C.F.R. § 825.220(c), including by refusing to reinstate her, forcing her to remain on an unpaid leave of absence, terminating her employment, and contesting her unemployment compensation claim by falsely asserting that she had been terminated for absenteeism/tardiness—that is, by recasting her approved medical leave as a firing offense.

78.  There is a causal connection between Clemons's exercise of her FMLA rights and C&W's adverse actions. C&W treated Clemons differently because she was on medical leave—by its own account, deciding her fate on the basis of her leave status while placing her actively working teammates in new positions. C&W personnel told Clemons that they had assumed she was not coming back from her medical leave. And C&W refused to reinstate her within days of her attempts to return, terminating her weeks later.

79.  C&W's violations of the FMLA were willful and were not in good faith, and C&W had no reasonable grounds to believe that its conduct complied with the FMLA.

16

WHEREFORE, Clemons respectfully requests that this Court enter judgment in her favor and against C&W as follows:

A.    A declaratory judgment that C&W's actions as described herein violate the FMLA;

B.    Equitable and injunctive relief, including:

(1)    preliminary and permanent injunctions enjoining C&W from retaliating against employees who exercise their rights under the FMLA; and

(2)    an order reinstating Clemons to her former position or an equivalent position, or an award of front pay in lieu of reinstatement;

C.    An award of lost wages and employment benefits, with prejudgment interest;

D.    Liquidated damages as allowable by law;

E.    An award of reasonable attorneys' fees and costs of suit;

F.    An award of pre- and post-judgment interest as provided by law;

G.    An award of other monetary losses suffered by Clemons, including negative tax consequence damages; and

H.    Such other and further relief as this Court deems necessary and proper.

### COUNT V: Disability Discrimination (PHRA)

80.    Paragraphs 1 through 79 are incorporated by reference as if fully set forth herein.

81.    Clemons is disabled within the meaning of the PHRA, has a record of a disability, and was regarded by C&W as disabled.

82.    C&W's acts, failures to act, practices, and policies set forth above constitute unlawful disability discrimination in violation of the PHRA, 43 P.S. § 955(a), including C&W's refusal to reinstate Clemons, its failure to engage in the interactive process and reasonably accommodate her, and its termination of her employment.

83. As a direct and proximate result of C&W's violations of the PHRA, Clemons has suffered and continues to suffer damages.

WHEREFORE, Clemons respectfully requests that this Court enter judgment in her favor and against C&W as follows:

A. A declaratory judgment that C&W's actions as described herein violate the PHRA;

B. Equitable and injunctive relief, including:

(1) preliminary and permanent injunctions enjoining C&W from engaging in disability discrimination;

(2) an order requiring C&W to institute and carry out policies, practices, and programs providing equal employment opportunities, including training for all employees regarding their responsibilities under the PHRA;

(3) an order requiring C&W to deliver this Court's verdict to all managers and employees of the company;

(4) an order requiring C&W to report to this Court regularly regarding its compliance with anti-discrimination law; and

(5) an order reinstating Clemons to her former position or an equivalent position;

C. An award of back pay, with prejudgment interest, and all employment benefits Clemons would have received, including but not limited to retirement and pension benefits and seniority;

D. An award of front pay in lieu of reinstatement;

E. An award of compensatory damages sufficient to compensate Clemons for her injuries, including but not limited to emotional distress, career damage, loss of earnings capacity, mental anguish, humiliation, embarrassment, and loss of dignity;

18

F.     An award of reasonable attorneys' fees and costs of suit;

G.     An award of pre- and post-judgment interest as provided by law;

H.     An award of other monetary losses suffered by Clemons, including negative tax consequence damages; and

I.     Such other and further relief as this Court deems necessary and proper.

<strong>COUNT VI: Retaliation (PHRA)</strong>

84.     Paragraphs 1 through 83 are incorporated by reference as if fully set forth herein.

85.     Clemons engaged in protected activity under the PHRA, including by requesting the reasonable accommodation of a medical leave of absence, submitting return-to-work documentation from her healthcare providers, and repeatedly seeking reinstatement following her approved medical leave.

86.     C&W retaliated against Clemons for her protected activity in violation of the PHRA, 43 P.S. § 955(d), including by refusing to reinstate her, forcing her to remain on an unpaid leave of absence, terminating her employment, and contesting her unemployment compensation claim with a false reason for her termination.

87.     There is a causal connection between Clemons's protected activity and C&W's adverse actions, including the unduly suggestive temporal proximity between her attempts to return to work and C&W's refusal to reinstate her, and C&W's shifting and inconsistent explanations for its actions.

88.     As a direct and proximate result of C&W's violations of the PHRA, Clemons has suffered and continues to suffer damages.

WHEREFORE, Clemons respectfully requests that this Court enter judgment in her favor and against C&W as follows:

A.    A declaratory judgment that C&W's actions as described herein violate the PHRA;

B.    Equitable and injunctive relief, including:

    (1)    preliminary and permanent injunctions enjoining C&W from engaging in retaliation against employees who exercise their rights under the PHRA;

    (2)    an order requiring C&W to institute and carry out policies, practices, and programs providing equal employment opportunities, including training for all employees regarding their responsibilities under the PHRA;

    (3)    an order requiring C&W to deliver this Court's verdict to all managers and employees of the company;

    (4)    an order requiring C&W to report to this Court regularly regarding its compliance with anti-discrimination law; and

    (5)    an order reinstating Clemons to her former position or an equivalent position;

C.    An award of back pay, with prejudgment interest, and all employment benefits Clemons would have received, including but not limited to retirement and pension benefits and seniority;

D.    An award of front pay in lieu of reinstatement;

E.    An award of compensatory damages sufficient to compensate Clemons for her injuries, including but not limited to emotional distress, career damage, loss of earnings capacity, mental anguish, humiliation, embarrassment, and loss of dignity;

F.    An award of reasonable attorneys' fees and costs of suit;

G.    An award of pre- and post-judgment interest as provided by law;

H.    An award of other monetary losses suffered by Clemons, including negative tax consequence damages; and

I.      Such other and further relief as this Court deems necessary and proper.

## JURY DEMAND

Clemons hereby demands a jury to try all claims triable by jury.

Respectfully submitted,

Dated: August 11 , 2026         _____

Stephanie J. Mensing
PA ID No. 89625
Mensing Law LLC
1515 Market Street, Suite 1200
Philadelphia, PA 19102
(215) 586-3751; (215) 359-2741 fax
stephanie@mensinglaw.com
Attorney for Plaintiff

21

### VERIFICATION

I, Felicia Clemons, am the Plaintiff in the above-captioned action. I have read the foregoing Complaint and know its contents. The factual allegations set forth therein are true and correct of my own knowledge, except as to those matters alleged on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on ___8/11/2026___.


*Felicia Clemons*
ID ekiie7DFYFQVW8vG7wpmrcuG

Felicia Clemons

# eSignature Details

| | |
|---|---|
| **Signer ID:** | **ekiie7DFYFQVW8vG7wpmrcuG** |
| Signed by: | Felicia Clemons |
| Sent to email: | fenomenalcomm@gmail.com |
| IP Address: | 174.173.12.222 |
| Signed at: | Aug 11 2026, 6:56 am EDT |